(Not for Publication)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | | |
|---|---|---|
| WILLIAM STAPPERFENNE and MARJAREE MAYNE-STAPPERFENNE, : : : Plaintiffs, : : v. : : NOVA HEALTHCARE ADMINISTRATORS, INC., et al., : : Defendants. : | | Civil No. 05-4883 (RBK) **OPINION** |

**KUGLER**, United States District Judge:

Presently before the Court is a motion by defendants NOVA Healthcare Administrators, Inc. ("NOVA") and Sevenson Environmental Services, Inc. ("Sevenson") (collectively "Defendants") for summary judgment against plaintiffs William Stapperfenne and Marjaree Mayne-Stapperfenne ("Plaintiffs") on their suit for claims brought pursuant to section 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. For the reasons set forth below, Defendants' motion will be denied.

**I.    BACKGROUND**

Plaintiff William Stapperfenne is an employee of Sevenson. On or about October 1, 2000, Defendants executed and delivered to William Stapperfenne a health insurance coverage plan ("the Plan") with the group name Sevenson Environmental Service, Group No. 149. The

1

parties agree that ERISA governs this Plan.  On June 14, 2003, William Stapperfenne married Plaintiff Marjaree Mayne-Stapperfenne, and shortly thereafter, he added his wife to the Plan as a dependent pursuant to the Dependent Special Enrollment Period clause contained in the Plan agreement. (Defs.' Mot. Summ. J. Ex. A.)  Immediately after adding Plaintiff Marjaree Mayne-Stapperfenne as a dependent, William Stapperfenne began making increased payments for the additional dependent coverage.

From July 14, 2003 to August 20, 2004, Plaintiff Marjaree Mayne-Stapperfenne incurred surgical and hospital expenses.  The amount of these medical bills totals approximately $20,000. (See Pls.' Opp'n Ex. E.)  Plaintiffs submitted Notices of Claim to Defendants regarding these expenses and allege that they complied with all of the conditions applicable to them under the terms of the insurance policy. (Compl. ¶ 7.)  Defendants rejected nearly all their claims for payment, however, citing either the exclusion in the Plan for treatment of preexisting conditions or the need for additional information from Plaintiffs. (See Pls.' Opp'n. Ex. E.)  In total, Plaintiffs received sixteen Explanation of Benefits forms ("EOBs") denying Defendants' obligation to pay for Marjaree Mayne-Stapperfenne's medical bills under the terms of the Plan. (Pls.' Opp'n Ex. E.)

Plaintiff Marjaree Mayne-Stapperfenne wrote letters addressed to NOVA's claims department contesting Defendants' denials of payment on February 19, 2004 and March 4, 2004. The record does not reveal what if any response she received from NOVA.  She continued to incur medical expenses after she wrote the letters, however, and Defendants continued to deem those expenses ineligible for coverage due to an unspecified preexisting condition.  On October 12, 2004, Plaintiffs' attorney wrote a letter disputing NOVA's denial of Plaintiffs' benefits to

which NOVA responded. (Pls.' Opp'n Exs. D, E, F.)  By letter dated November 8, 2004, Medical Claims Supervisor Judith A. De Long defended NOVA's handling of Plaintiffs' claims and offered to forward copies of the relevant EOBs. (Pls.' Opp'n Ex. F.)  Plaintiffs attest that they considered this letter to be the reply to their administrative appeal.

Consequently, on March 15, 2005, Plaintiffs initiated this lawsuit in New Jersey Superior Court, Law Division, Cumberland County.  In the original Complaint, Plaintiffs sued NOVA for the alleged denial of coverage under the Plan, but Plaintiffs subsequently amended their complaint to add Sevenson as a defendant.  NOVA and Sevenson removed the action to this Court on the basis of federal question jurisdiction.  On March 2, 2007, Defendants filed a motion for summary judgment, arguing that Plaintiffs failed to exhaust their administrative remedies as set forth in the Plan agreement and that NOVA properly denied coverage of Marjaree Mayne-Stapperfenne's treatments for a preexisting condition.  Plaintiffs filed an opposition brief, contending that their multiple letters to NOVA constituted sufficient compliance with the administrative exhaustion requirements as described by the Plan agreement and that Defendants have failed to identify the preexisting condition on which the denials were based.

**II.   STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed,

and all justifiable inferences are to be drawn in his favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### III.  DISCUSSION

#### A.  Exhaustion of Administrative Remedies

Defendants have failed to show that Plaintiffs did not timely exhaust their administrative remedies. ERISA permits a claimant to bring a civil action following an adverse benefits determination. 29 U.S.C. § 1132(a)(1)(B). Absent an applicable exemption, however, a court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan. Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir. 1990). The purposes of the exhaustion requirement are to "help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide for a non-adversarial method

of claim settlement; and to minimize the costs of settlement for all concerned." Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 249 (3d Cir. 2002). A court may excuse ERISA's exhaustion requirement only if the plaintiff makes a "clear and positive showing" that utilizing the defendant's administrative procedures under the plan would have been futile. See Berger v. Edgewater Steel Co., 911 F.2d 911, 916-17 (3d Cir. 1990).

Defendants argue that Plaintiffs did not file any appeals, and thus their claims are barred due to their failure to exhaust their administrative remedies under the Plan. Plaintiffs counter that the several letters they and their attorney addressed to NOVA's claims department should be construed as substantial compliance with the Plan's administrative exhaustion requirement. (Pls.' Opp'n Br. at 7.)

The Plan agreement outlines a procedure for appealing a denial of benefits. It provides in relevant part:

> This appeal provision will allow the Plan Participant to:
>
> > (a) Request from the Plan Administrator a review of any claim for benefits. Such request must include: the name of the Employee, his or her Social Security number, the name of the patient and the Group Identification Number, if any.
> >
> > (b) File the request for review in writing, stating in clear and concise terms the reason or reasons for this disagreement with the handling of the claim.
>
> The request for review must be directed to the Plan Administrator or Claims Administrator within 60 days after the claim payment date or the date of the notification of denial of benefits.
>
> . . . [T]he Plan Administrator will provide the Plan Participant with a written response within 60 days of the date the Plan Administrator receives the Plan Participant's written request for review, and if not notified, the Plan Participant may deem the claim denied. . .

  A Plan Participant must exhaust the claims appeal procedure before filing a suit for benefits.[1]

  Contrary to Defendants' contention that Plaintiffs "did not file any appeal with respect to the denial of benefits," Plaintiffs' and their attorney wrote a total of three letters to NOVA, which complied with the requirements for an appeal of denial of benefits under the terms of the Plan. The content of the first letter included all the information required by the Plan agreement for an appeal, namely: it was in writing, addressed to NOVA Healthcare Administrators Claims Department, and included the beneficiary's and employee's names, the beneficiary's Social Security number, the group number, and it stated "the reason or reasons for th[e] disagreement with the handling of the claim." (See Pls.' Opp'n Ex. A.)  Specifically, the letter, which appears to be responsive to some prior communication between Marjaree Mayne-Stapperfenne and "Marianne C." of the claims department, states that Marjaree Mayne-Stapperfenne did not have health insurance before she married William Stapperfenne and that the disputed claims were not from treatment by any of the same healthcare providers she had seen during the six months before the start of her coverage by NOVA.  It states further, "I hope that this now corrects the issues about Nova paying for my medical expenses, and that Nova Healthcare will now please pay the claims that have been rejected by your company." (Id.)

  Similarly, Plaintiffs' second letter, dated March 4, 2004, also includes the requisite identifying information and explains that Marjaree Mayne-Stapperfenne is not seeking

---

[1] The EOBs notifying Plaintiffs of the denials of benefits also include a provision concerning the appeal procedure, which is partially inconsistent with the Plan agreement. (Pls.' Opp'n Ex. E.)  The EOBs indicate that a beneficiary has not 60, but 180 days from the date of receipt of a denial to appeal the decision. (Id.)  This discrepancy is not material to the Court's disposition of Defendants' summary judgment motion, however.

reimbursement for visits to doctors who treated her prior to her coverage by the Plan. (Pls.' Opp'n Ex. B.)  The March 4 letter continues, "I hope that this now resolves the problems of my pre-existing conditions and that you will finally pay the claims sent to you." (Id.)  Plaintiffs' attorney's October 12, 2004 letter also contains the necessary identifying information and asserts that under the terms of the Plan agreement, Plaintiffs' claims should be covered. (Pls.' Opp'n Ex. C, D.)  Defendants have suggested no specific reason why Plaintiffs' letters fell short of the requirements for an appeal, and this Court can discern no deficiency.  Thus, a reasonable fact finder could determine that all three letters constituted appeals under the terms of the Plan.

Significantly, however, there is no evidence in the record from which the Court can deduce the timeliness of these appeals.  While Plaintiffs and Defendants have submitted dozens of EOBs, which reflect the dates on which they were prepared, there is no indication whether those preparation dates reflect the dates on which Plaintiffs first got notice of the denials of their claims.  Accordingly, Defendants have not met their burden of showing that Plaintiffs neglected to exhaust their administrative remedies.

  B.  Preexisting Condition Exclusion

As a preliminary matter, the Court must determine what standard of review to apply to Defendants' decisions to deny benefits.  Generally, courts review decisions of ERISA plan administrators de novo.  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  However, when the plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, courts apply an arbitrary and capricious standard of review.  Id. at 45.  Under the arbitrary and capricious standard of review, a court may overturn a decision by the Plan administrator only if it is "without reason, unsupported by substantial

evidence or erroneous as a matter of law." Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993) (citation omitted).  Given this narrow scope of review, "the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." Id.

Discretion on the part of an administrator may either be explicit or implied from the plan's terms.  Luby v. Teamsters Health, Welfare, & Pension Trust Funds, 944 F.2d 1176, 1180 (3d Cir.1991).  To determine whether a plan grants discretion to an administrator, a court must consider "the provisions of the [plan] as interpreted in light of all the circumstances and such other evidence of the intention of the [plan's creator] with respect to the [plan] as is not inadmissible."  Firestone Tire & Rubber Co., 489 U.S. at 112 (quoting Restatement (Second) of Trusts § 4, Comment d (1959)).  Although the primary focus is on the plan language, a finding of discretion is not dependent on "a particular verbal formula."  Heasley v. Belden & Blake Corp., 2 F.3d 1249, 1256 (3d Cir.1993).

An additional consideration in determining the applicable scope of review is whether the insurance company both funds and administers benefits.  The Third Circuit has stated that when an company serves both those functions, it is generally acting under a conflict of interest, and the reviewing court should scrutinize its decision to deny benefits under a heightened form of the arbitrary and capricious standard of review.  Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 387 (3d Cir. 2000).  The reviewing court should apply the arbitrary and capricious standard of review on a sliding scale basis, intensifying the degree of scrutiny to match the degree of the conflict.  Id.  This standard of review permits the court to note discrete factors that suggest a conflict influenced the administrator's decision.  Id. at 378.  "Suspicious events" and "procedural

anomalies" raise the likelihood of self-dealing and warrant more intense review, in the higher range of the sliding scale of the heightened arbitrary and capricious standard. Id. at 394. The plaintiff carries the burden of proof to demonstrate that a plan administrator's actions warrant a heightened standard of review. Marciniak v. Prudential Fin. Ins. Co. of Am., 184 F. App'x 266, 268 (3d Cir. 2006) (citing Schlegel v. Life Ins. Co. of N. Am., 269 F. Supp. 2d 612, 617 (E.D. Pa. 2003)).

NOVA's decision denying Plaintiffs' claims for benefits must be reviewed under the arbitrary and capricious standard of review. The Plan agreement states, in pertinent part,

> the Plan Administrator shall have maximum legal discretionary authority to construe and interpret the terms and provisions of the Plan, to make determinations regarding issues which relate to eligibility for benefits, to decide disputes which may arise relative to a Plan Participant's rights, and to decide questions of Plan interpretation and those of fact relating to the Plan.

(Defs.' Mot. Summ. J. Ex. B at 46.) This plain language is not contradicted by any other evidence, and leads this Court to conclude that the Plan grants discretion to the administrator. As such, the Court must apply an arbitrary and capricious standard of review.

Moreover, Plaintiffs have not pointed to any conflict of interest that would warrant a heightened arbitrary and capricious standard of review. The Plan appears to be a self-funded one, meaning its funding is derived solely from contributions by Sevenson and Sevenson's covered employees. (See Defs.' Mot. Summ. J. Ex. A at 47.) NOVA serves as the third-party administrator of the Plan and in that capacity is responsible for interpreting the Plan, making determinations of eligibility for coverage, and deciding disputes relating to coverage. (Pls.' Opp'n Ex. F.) As a result, there is no obvious basis for heightened review due to a conflict of interest. Additionally, Plaintiffs have not indicated any discrete factors that would suggest a

9

conflict influenced the administrator's decision, thereby meriting higher scrutiny.  See Pinto, 214 F.3d at 378.

Nevertheless, even under this narrow scope of review, Defendants are not entitled to summary judgment because Defendants have at no time identified the preexisting condition on which they based the denial of Plaintiffs' benefits.  The Plan provides that treatment for preexisting conditions are not covered for a period of twelve months after the beneficiary enrolls.  A preexisting condition is defined as "a condition for which medical advice, diagnosis, care or treatment was recommended or received within six months of the person's Enrollment Date under this Plan."  The EOBs notifying Plaintiffs of the denial of their claims stated only that the reason for denial was "pre-existing conditions are a plan exclusion."  (Pls.' Opp'n Ex. E.)  Defendants' moving papers and the evidence offered in support thereof are devoid of any indication of what Marjaree Mayne-Stapperfenne's alleged preexisting condition was.  The record reveals only that during the six-month "look-back period" for determining a preexisting condition, she received treatment for panic attacks, chronic low back pain, and had a procedure for her right sacroiliac joint.  Nowhere, however, do Defendants offer evidence or explanation of what supposed condition that treatment was for or how the subsequent treatment for which NOVA denied benefits was for the same condition.  As such, the decision to deny Plaintiffs' benefits was "without reason" and "unsupported by substantial evidence."  See Abnathya, 2 F.3d at 45.  Defendants must offer some evidence identifying that alleged preexisting condition.  See McLeod v. Hartford Life & Accident Ins. Co., 372 F.3d 618, 628 (3d Cir. 2004) (finding that "some nebulous or unspecified medical problem" cannot serve as the basis for denial of benefits based on preexisting condition exclusion).  Thus, a reasonable fact finder could conclude that

NOVA's decision to deny Plaintiffs claims for benefits was arbitrary and capricious, and Defendants' motion for summary judgment will be denied.

## IV. CONCLUSION

Based on the foregoing reasoning, the Court will deny Defendants' motion for summary judgment. An accompanying Order shall issue today.

Dated: 12/5/07                                       s/ Robert B. Kugler
                                                     ROBERT B. KUGLER
                                                     United States District Judge